FEDERAL DEPOSIT INSURANCE COR-
PORATION, Plaintiff, Appellee,

v.

Juan J. SANTIAGO PLAZA,
Defendant, Appellee,

v.

BANCO CENTRAL Y ECONOMIAS,
Counterdefendant, Appellant.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, Plaintiff, Appellee,

v.

Moises SANTIAGO VASALLO,
Defendant, Appellee,

v.

BANCO CENTRAL Y ECONOMIAS,
Counterdefendant, Appellant.

Nos. 79–1014, 79–1015.

United States Court of Appeals,
First Circuit.

Submitted April 24, 1979.

Decided May 1, 1979.

Juan E. Rodriguez Diaz, Jose A. Gonzalez Gierbolini, and Sweeting, Pons, Gonzalez & Rodriguez, San Juan, P. R., on brief for counterdefendant, appellant.

Ruben O. Figueroa and Figueroa & Nassar, Hato Rey, P. R., on brief for appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

These cases are before the court on appellees' motion to dismiss for want of appellate jurisdiction and for mootness. We deny the motion but summarily reverse the district court.

The procedural history of these consolidated appeals, although complex, is necessary to an understanding of our ruling. These cases originated in the courts of the Commonwealth of Puerto Rico. In March of 1978, defendants-appellees removed to federal district court. Five other parallel cases (hereinafter referred to as FDIC # 1) were removed at the same time. All seven cases involved collection suits by the FDIC in which appellant appeared to answer a counterclaim by one of the several appellees. The facts underlying the seven suits are fully set out in our decision in FDIC # 1, *FDIC v. Acosta Otero,* 598 F.2d 627 (1st Cir. 1979).

The seven parallel cases were, unfortunately, assigned to three different district judges. On April 11, 1978, the district judge hearing the two cases involved in these appeals (hereinafter referred to as FDIC # 2) remanded to the Commonwealth courts. On April 12 the clerk of the district court duly notified the clerk of the Commonwealth court of the remand.

On April 19 and June 12, 1978, the two judges hearing FDIC # 1 denied motions to remand their respective cases. The decisions were certified for appeal and this court accepted jurisdiction, 28 U.S.C. § 1292(b). The district judge in FDIC # 2, however, denied a timely motion for reconsideration of his remand order on May 10, 1978. Then, having learned of the split in the district on the legal issue involved in all seven cases, the court hearing FDIC # 2 granted an untimely motion for reconsideration on August 29, 1978. The order granting the motion purported to stay all proceedings in FDIC # 2 until the appeals in FDIC # 1 had been decided.

Appellant in FDIC # 2 then moved for reconsideration of the purported stay, pointing out its view that the district court had no jurisdiction over remanded cases. The motion was denied. Appellant then moved in the Commonwealth court to initiate pre-trial proceedings. Having learned of appellant's actions in state court, the district judge issued an order on November 17, 1978, which read, in part, as follows:

"ORDERED that Banco Central y Economias and its attorneys of record shall forthwith withdraw its motion of October 24, 1978 from consideration by the Superior Court of Puerto Rico, San Juan, and if said motion has already been acted upon, to inform said tribunal that it wants no action taken . . . ."

The order went on to direct appellant's attorney to show cause why he should not be held in contempt for violation of the August 29 "stay". Appellant appeals from the November 17 order.

Appellees argue that this court lacks appellate jurisdiction because the November 17 order is not appealable and that appellant is seeking to evade its failure to file a timely notice of appeal from the order dated August 29. We have little trouble with these contentions. The August 29 order purported to stay proceedings in the district court. As explained below, there was no case in the district court. The appealability of such an order raises interesting questions, but they need not concern us. The November 17 order is clearly a separate and distinct injunction against appellant proceeding in state court. As such, it is clearly appealable under 28 U.S.C. § 1292(a)(1). *Johnson v. Butler Bros.,* 162

F.2d 87 (8th Cir. 1947); 9 Moore's Federal Practice ¶ 110.20(1), at 235.[1] Finally, even if we were uncertain about appellate jurisdiction under section 1291, the seriousness of the jurisdictional problem involved here would, as explained below, require that we treat this appeal as a mandamus petition. *See Fuchs v. Hood Industries, Inc.,* 590 F.2d 395 (1st Cir. 1979). *In re La Providencia Dev. Corp.,* 406 F.2d 251 (1st Cir. 1969).

■ Appellees' mootness arguments are similarly groundless. Appellees are correct in pointing out that the order of November 17, 1978, was vacated on January 31, 1979. Appellees fail to mention, however, that only that portion of the order requiring appellant's attorney to show cause in a contempt hearing was vacated, and the contempt proceeding was only averted when appellant's attorney agreed not to proceed in state court. The injunction against state court proceedings is not moot.

■ The merits of these appeals are simpler than the procedural tangles involved. The law in this circuit is clear that once a district court has decided to remand a case and has so notified the state court, the district judge is without power to take any further action. *In re La Providencia Dev. Corp., supra,* 406 F.2d at 251. This is true no matter how erroneous the district judge may later decide his remand decision was. "The district court has one shot, right or wrong." *Id.* at 253. This rule is not an aberration from the general rule. *See id.* at 253 n.2. Rather, it is based upon the statutory command that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal *or*

*otherwise.*" 28 U.S.C. § 1447(d) (emphasis added). This language has been universally construed to prohibit even a motion for reconsideration once the state court has resumed jurisdiction. In the four months between remand and reconsideration, the state court's jurisdiction, however it may be measured, had resumed.

■ For the sake of thoroughness, we address briefly appellees' only argument on the merits. Appellees attempt to invoke a defendant's right to bring a second removal petition under the second paragraph of 28 U.S.C. § 1446(b)[2] and the doctrine codified therein. *See Fritzlen v. Boatsmen's Bank,* 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551 (1909); *Powers v. Chesapeake & Oh. Ry.,* 169 U.S. 92, 18 S.Ct. 264, 43 L.Ed. 673 (1898); 1A Moore's Federal Practice ¶ 0.168[.3–5]. These cases stand for the proposition that a defendant who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a *new* and *different* ground for removal. Appellees' attempts to characterize the certification of the removal issue for appeal in FDIC # 1 as a new and different ground for removal (because the removal issue was thereby shown to be a close question of law) are unpersuasive.

■ Because the cases were not properly before the district court it could not stay proceedings or issue an injunction in aid of that stay. Moreover, because the court lacked jurisdiction, it could not possibly issue the injunction "in aid of its jurisdiction" and thereby avoid the proscription of 28 U.S.C. § 2283.[3] The injunction must be

1. Appellees' argument based on cases denying the appealability of orders staying *actions in the district court* is patently frivolous. There is a distinct difference between staying a case properly before the district court and enjoining the prosecution of a state court suit.

2. The second paragraph of 28 U.S.C. § 1446(b) provides:
    "If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the

defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

3. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

vacated and the district court instructed not to interfere with further proceedings in the Commonwealth court.

We are not unmindful of the anomalous result produced by the instant decision on the law of remand and our simultaneous decision in FDIC # 1 that the district court was correct in not remanding the other five cases. Seven similar, but not identical suits will be tried in two different forums, two in the Commonwealth courts and five in the federal courts. Despite the anomaly, we are powerless to produce a different result. The "one shot" rule rests on a strong Congressional policy that non-removable suits should not be tied up in lengthy appeals and motions for reconsideration in the federal courts. That policy is so strong that, as here, it sometimes sweeps in suits that could be heard in federal court. But the policy remains clear, and the fact that the two suits involved in these appeals have been tied up in the federal courts for more than a year only serves to demonstrate the legitimacy of a black letter rule.

*Reversed.*